UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

In re:

Clinton William Ferguson,

         Debtor.

Bky. Case No. 12-45120 (RJK)
Adv. Proc. No.

Clinton William Ferguson,

         Plaintiff,
v.

Navient Solutions, LLC;
and Navient Credit
Finance Corporation,

         Defendants.

COMPLAINT TO DETERMINE
DISCHARGEABILITY
OF DEBTS

## PLAINTIFF'S COMPLAINT

Plaintiff Clinton William Ferguson, by and through his undersigned counsel, files this complaint against Defendants Navient Solutions, LLC, and Navient Credit Finance Corporation on personal knowledge as to those matters within his knowledge, and on information and belief as to all other matters, as follows:

1

## I. PRELIMINARY STATEMENT

1. For the last ten years, Sallie Mae and Navient have been engaged in an effort to defraud student debtors and subvert the orderly working of the bankruptcy courts. Specifically, Sallie Mae and Navient have been originating and servicing dischargeable consumer loans and disguising them as non-dischargeable student loans. Defendants have done this in order to discourage debtors from seeking their constitutional right to relief under Title 11 and to allow creditors to continue to collect on discharged loans after a debtor's bankruptcy. In order to effectuate this illegality, Sallie Mae and Navient have appropriated a legal presumption for a class of debt that they know is not entitled to that presumption, thereby using the authority of the bankruptcy courts to cloak their fraud in the color of law and escape detection. Sallie Mae and Navient are willfully and maliciously engaged in a pattern and practice targeted at some of society's most vulnerable persons that they know defiles the proper workings of the bankruptcy process. Plaintiff Clinton Ferguson brings this action to enforce his rights under law.

## II. PARTIES

2. Plaintiff Clinton William Ferguson is an individual consumer and a resident of this District who filed for relief under Title 11 in this District in 2012.

3. Defendant NAVIENT SOLUTIONS, LLC is a business entity that in the ordinary course of business regularly, on behalf of itself or others, engages in the servicing and collection of consumer debt. NAVIENT SOLUTIONS, LLC is a national company with its principal place of business in Wilkes-Barre, Pennsylvania, and it may be served through its registered agent Corporate Service Company, 327 Hillsborough, Raleigh, NC 27603.

4. Defendant NAVIENT CREDIT FINANCE CORPORATION is a business entity that in the ordinary course of business regularly, on behalf of itself or others, engages in the origination, servicing and collection of consumer debt. NAVIENT CREDIT FINANCE CORPORATION has a principal place of business at 2001 Edmund Halley Drive, Reston, VA, 20191 and may be served through its registered agent Corporate Service Company, 111 East Main Street, Richmond, VA, 23219.

### III.  JURISDICTION AND VENUE

5. This Adversary Proceeding is brought under Case Number 12-45120 (RJK).

6. This Court has jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1334(b) and 28 U.S.C § 157(b) and 1332. This is a core proceeding under Title 11 because it concerns a determination as to the dischargeability of a debt. Furthermore, this Court has supplemental jurisdiction over this Adversary Proceeding pursuant to 28 U.S.C. § 1367 because the additional claims are related to the core proceeding and involve questions of federal law.

7. This Adversary Proceeding is brought pursuant to 11 U.S.C § 523(a)(8), 15 U.S.C § 105 and Federal Rules of Bankruptcy Procedure Rule 7001(9).

8. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1409 because this matter arises in and is related to a bankruptcy case in this District.

## IV. STATEMENT OF FACTS

A. Section 523(a)(8) Of The Bankruptcy Code.

9. In 1978, there was a growing concern that students were taking advantage of the Bankruptcy Code by incurring extensive student loan debt and then declaring bankruptcy soon after graduation. In response, Congress enacted section 523(a)(8) of the Bankruptcy Code to prohibit the discharge of federal student loans during the first five years of repayment (unless payment would constitute an undue hardship). Through a series of amendments, which first lengthened and then eliminated the five-year non-dischargeability time frame, it has become increasingly difficult for debtors to attain discharges of their student loan debts.

10. Although the rationale behind section 523(a)(8) has been questioned by many scholars,[1] the justification for excepting federal student loan debt from discharge was not without some merit. In fact, in the age of soaring tuition costs, the original justification has become more compelling. Section 523(a)(8) serves not

---

[1] *See* Rafel I. Pardo & Michelle R. Lacey, THE REAL STUDENT-LOAN SCANDAL: UNDUE HARDSHIP DISCHARGE LITIGATION, 83 Am. Bankr. L.J. 179, 181 (2009) ("Tragically, Congress disregarded empirical evidence from a General Accounting Office study which found that less than one percent of all federally insured and guaranteed student loans were discharged in bankruptcy. Simply put, the discharge of student loans in bankruptcy was too minor to threaten the economic viability of the student-loan program.").

only to protect the taxpayers, but also to preserve the solvency of student lending programs for the next generation of students.

11.     In 2005, after extensive lobbying, private education lenders and debt collectors won *limited* protection in bankruptcy *for some of their educational loan products*.[2]  Specifically, Congress limited protection for private education loan instruments to the extent that such money supplemented and mirrored federal student lending: money lent to eligible students at Title IV accredited schools solely for tuition, room, board, and books ("Qualified Education Loans").[3]

12.     But commercial lenders were not satisfied with the origination volume of Qualified Education Loans.  The paperwork was burdensome, schools would not certify sums in excess of the "Cost of Attendance," and it prevented lending to thousands of for-profit colleges and high schools that had not obtained Title IV accreditation.  Thereafter, lenders initiated new programs that lent money directly to students in excess of the "Cost of Attendance" (hereinafter, "Consumer Education Loans").  Consumer Education Loans were much easier to originate because they bypassed the certification requirements codified in the Higher Education Act.  These loans were not and are not Qualified Education Loans under the Tax Code or Bankruptcy Code.  Like student credit card debt, they are simply unsecured

---

[2] Bankruptcy Abuse and Consumer Protection Act Pub. L. No. 109-8, § 220, 119 Stat. 23, 59 (2005) (hereinafter "BAPCPA").

[3] *Schultz v. Navient Solutions, Inc.,* 2016 WL 8808073  (Bankr. D. Minn. Dec. 2016).

consumer debts and are discharged automatically upon entry of a discharge injunction.

1. **The Application Of Section 523(a)(8).**

13. Prior to 2005, section 523(a)(8) was easy to apply because the exception to dischargeability was absolute. If a student loan was issued or guaranteed by the federal government, it was non-dischargeable absent a showing of "undue hardship." This fueled the belief that all student loans are non-dischargeable. But private lenders were only given *qualified* protection in 2005 such that section 523(a)(8)(B) only excepts *some* private education loans from discharge. This created an opportunity for unscrupulous creditors to exploit the application of section 523(a)(8) and deceive debtors into thinking that all private student loans, like their federal cousins, were excepted from discharge.

14. This problem was made worse because section 523(a)(8) is "self-executing" and thus its correct application relies on the good faith and honesty of creditors. When a debtor files a bankruptcy petition, the debtor includes all unsecured debts on a Schedule F form, listing only the amount of the debt, the name of the creditor, and the consideration received. After demonstrating compliance with the Bankruptcy Code, a court then issues an order discharging all pre-petition debts listed on the bankruptcy petition except for those listed in section 523(a).[4] Importantly,

---

[4] 11 U.S.C.A. § 727(b) ("Except as provided in section 523 of this title, a discharge under subsection (a) of this section discharges the debtor from all debts that arose before the date of the order for relief under this chapter.").

the discharge order does not specifically state which loans, if any, are presumptively excepted from discharge. Rather, it states that the order does not discharge some debts, including "debts for most student loans."

15. If a creditor believes that a debt they hold is excepted from discharge, it is their legal burden to prove that the debt is encompassed by section 523(a)(8).[5] Once the creditor proves the debt is presumptively non-dischargeable, the burden then shifts to the debtor to prove that repaying the debt would constitute an "undue hardship."[6] Absent an adversary proceeding, any educational debt not encompassed by section 523(a)(8) is automatically and as a matter of law discharged upon entry of the discharge order.[7] Accordingly, it is left to the creditors to determine whether their particular educational loan is excepted from discharge by section 523(a)(8), and, where confusion exists, seek clarity from the court. The credi-

---

[5] *Owens v. Owens,* 155 F. App'x 42, 43 (2d Cir. 2005) ("It is the creditor seeking an exception to discharge who bears the burden of proving facts coming within one of the § 523 exceptions."); *In re Renshaw,* 222 F.3d 82, 86 (2d Cir. 2000) ("Because bankruptcy is both a right of the debtor, and a remedy for the creditor . . . a proper balancing of those competing interests requires the creditor to prove by a preponderance of the evidence that its claim is one that is not dischargeable."); *In re Metcha,* 310 F.3d 308, 311 (3d. Cir 2002) (stating that creditor opposing discharge has burden of establishing that the obligation is an educational loan under section 523(a)(8)).

[6] *In re Haroon,* 313 B.R. 686, 689 (Bankr. E.D. Va. 2004) ("A student loan creditor is not required to seek a dischargeability determination during the pendency of the bankruptcy case. The failure to seek a dischargeability determination does not alter the fact that the debt is or is not discharged upon entry of the discharge order. It merely avoids a judicial declaration of that fact at that time . . . The parties' rights were fixed at that time and, if the debt was discharged, the creditor was barred from collecting it.")

[7] *In re Meyer,* No. 15-13193, 2016 WL 3251622, at *2 (Bankr. N.D. Ohio June 6, 2016) ("For the reasons stated in the debtor's motions and the *Decena* decision, the Court finds that the debtor's student loans were discharged on September 16, 2015, because they do not fall within 11 U.S.C. § 523(a)(8). The Court further finds that the student loan servicers violated the discharge injunction of § 524(a)(2) by attempting to collect on the student loan accounts after the date of the debtor's discharge.").

tor's good faith and the threat of sanctions are the only checks on compliance with discharge injunctions.

2. **Defendants Manipulate The Application Of Section 523(a)(8) And Deceive Debtors Into Believing Their Non-Qualified Student Loans Were Not Discharged.**

16. Not content with the protections won from Congress in 2005, creditors soon devised a scheme to manipulate this presumption of non-dischargeability and deceive debtors and the bankruptcy courts into thinking that all private student loans, both qualified and non-qualified, both accredited and unaccredited, were excepted from discharge. To effectuate this fraud, creditors represented to student debtors that the Bankruptcy Code prohibited discharge of any loan made to any person for any educational purpose.

17. Sallie Mae and Navient provided Consumer Education Loans, *inter alia*, through the Tuition Answer loan program. This lending program was a "Direct-to-Consumer" loan program that originated money to consumers outside the confines of the financial office and were made in excess of the school's published "Cost of Attendance."

18. So a law that was originally designed to prevent students from taking advantage of the bankruptcy system enabled unscrupulous creditors to take advantage of the bankruptcy system. These loans are disproportionately issued to low-income students who lack the resources and knowledge to seek relief in an adversary proceeding, which is an expensive and time-consuming undertaking. In fact,

only one tenth of one percent (0.1%) of debtors in bankruptcy seek to discharge their student debts.[8] In the rare event a debtor has filed an adversary proceeding, creditors often settle or forgive student debts that were already legally discharged, thereby preventing courts from discovering that these debts were never entitled to a presumption of non-dischargeability in the first instance, and ensuring that they are able to continue collecting on 99.9% of other discharged debts without consequence.

**3. Defendants Reveal Their Bad Faith By Relaying Different Information To The SEC And Sophisticated Investors.**

19. During the same time, student lenders were securitizing these debts for sale on the secondary market. Lenders were rightfully concerned that if they represented to investors that all private student loans were non-dischargeable in bankruptcy, sophisticated investors would easily enough discover the misrepresentation (based on a plain reading of the statute), and issuers would be liable for securities violations.[9] Major lenders and underwriters thereafter included in student loan asset-backed securities' prospectuses language warning investors that, pursuant to

---

[8] Jason Iuliano, AN EMPIRICAL ASSESSMENT OF STUDENT LOAN DISCHARGES AND THE UNDUE HARDSHIP STANDARD, 86 Am. Bankr. L.J. 495, 505 (2012) (stating that in 2007, at least, only .01% of all debtors in bankruptcy with student loans filed an adversary proceeding seeking discharge).

[9] *See, e.g.*, 15 U.S.C. § 78j.

section 523(a)(8), only private loans made for qualified expenses were excepted from discharge.[10]

B. **Plaintiff Clinton William Ferguson Borrows More than $70,000 in Tuition Answer Loans And Seeks Relief Under Title 11.**

20. From 2004-2010, Plaintiff Clinton William Ferguson was a student at Tuskegee University. The Cost of Attendance during the relevant academic terms was:

- $22,461 in 2005-2006;
- $23,791 in 2006-2007;
- $26,124 in 2007-2008.

21. During that time, Plaintiff Clinton William Ferguson borrowed a series of qualified student loans from both the federal government and Sallie Mae to cover his "Cost of Attendance."

22. In addition, between 2006 and 2008, Ferguson borrowed not less than eight Sallie Mae Tuition Answer loans totaling more than $70,000 that were made directly to him, and were not certified by the school's financial aid office prior to origination. These loans were all made in excess of the "Cost of Attendance" and/or were incurred by a non-taxpayer and thus were not "qualified education loans"

---

[10] *See* SLM Loan Trust 2008-1 Prospectus Supplement dated January 10, 2008, at 33 ("Risk of Bankruptcy Discharge of Private Credit Student Loans: Private credit student loans ***made for qualified education expenses*** are generally not dischargeable by a borrower in bankruptcy . . . direct-to-consumer loans are disbursed directly to the borrowers based upon certifications and warranties contained in their promissory notes, including their certification of the cost of attendance for their education. This process does not involve school certification as an additional control and, therefore, may be subject to some additional risk that ***the loans are not used for qualified education expenses***. If you own any notes, you will bear any risk of loss resulting from the discharge of any borrower of a private credit student loan to the extent the amount of the default is not covered by the trust's credit enhancement.") (emphasis added).

as that term is defined in 11 U.S.C. 523(a)(8)(B), including the following Tuition Answer Loans during the following academic terms:

    **a.**    On February 27, 2006, for $1,639 (2005-2006);

    **b.**    On August 4, 2006, for $16,593, November 30, 2006, for $14,108, April 2, 2007, for $6,270 and June 26, 2007, for $2,195 (2006-2007);

    **c.**    On August 8, 2007, for $15,750 and October 25, 2007, for $8,592 (2007-2008); and

    **d.**    On August 29, 2008, for $11,960 (2008-2009)

23.    26 U.S.C. 6050S obligates Defendants to issue 1098-E tax forms to all customers with "qualified education loans" in order to allow customers to deduct interest payments from their federal taxes.

24.    Upon information and belief, Defendants did not schedule any of these debts as "qualified education loans" requiring a 1098-E form to be issued in connection with interest payments and never issued Ferguson a 1098-E for any of his Tuition Answer loans.

25.    Defendants are now estopped from claiming these loans were "qualified education loans" owing to their failure to comply with federal law, and denying Plaintiff Clinton William Ferguson the benefit of receiving tax credits against payments.

26. In September 4, 2012, Plaintiff Clinton William Ferguson sought relief under Title 11 in this Court in Case No. 12-45120, *In re Clint Ferguson*, formerly pending before this Honorable Court.

27. On November 28, 2012, this Court ordered discharge of all Plaintiff Clinton William Ferguson's properly scheduled pre-petition debt, including the Tuition Answer Loans.

28. Defendants were duly notified of discharge.

29. Despite their legal burden, Defendants did not file an adversary proceeding to contest the dischargeability of the Tuition Answer loans.

30. Instead of charging off the Tuition Answer loans, Defendant Navient Solutions, Inc., thereafter engaged the services of various collection firms to attempt to collect on this otherwise discharged debt in violation of this Court's Order and the Bankruptcy Code. This conduct has been extremely abusive. Plaintiff Clinton William Ferguson has received hundreds of collection calls over the last five years, some even threatening to seize Plaintiff Clinton William Ferguson's assets including his automobile. Plaintiff Clinton William Ferguson has also received hundreds of dunning letters and negative reports have been made to the major credit bureaus.

31. Defendants' abusive, deceptive and harassing collection efforts after the Plaintiff Clinton William Ferguson's bankruptcy discharges were made knowingly and willfully in violation of this Court's discharge orders and must be stopped and sanctioned.

## V. CLAIMS FOR RELIEF

Count One: Declaratory Judgment

32.     Plaintiff Clinton William Ferguson hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

33.     Plaintiff Clinton William Ferguson requests declaratory judgment pursuant to 28 U.S.C. § 2201 and Federal Rule of Bankruptcy Procedure 7001(9) that Plaintiff Clinton William Ferguson's Tuition Answer Loans are not non-dischargeable student loans or qualified education loans under section 523(a)(8), and were therefore discharged upon entry of the applicable discharge injunction.

Count Two: Violations Of The Discharge Order

34.     Plaintiff Clinton William Ferguson hereby incorporates the allegations in the preceding paragraphs as if fully set forth herein.

35.     Plaintiff Clinton William Ferguson's Tuition Answer Loans were discharged pursuant to the Discharge Order because they were unsecured consumer loans and not non-dischargeable student loans.

36.     Defendants nonetheless sought to collect on these debts, either directly or indirectly, by use of dunning letters, phone calls, negative reports made to the major credit bureaus, failure to update these credit reports, and commencing or continuing legal action to recover the discharged debts in violation of 11 U.S.C § 524.

37.     Plaintiff Clinton William Ferguson requests that Defendants be ordered to pay damages in an amount to be determined at trial for the willful violations of the

discharge injunctions pursuant to 11 U.S.C § 105 and also requests an award of attorneys' fees and costs.

## VI. JURY DEMAND

38.     Pursuant to his rights under Rule 38 of the Federal Rules of Civil Procedure and Rule 9015 of the Federal Rules of Bankruptcy Procedure, Plaintiff Clinton William Ferguson hereby requests a trial by jury on all issues so triable.

## PRAYER

39.     In light of the foregoing, Plaintiff Clinton William Ferguson requests that Defendants be cited to appear and judgment be entered against Defendants for:

**(1)**     declaratory relief that Plaintiff Clinton William Ferguson's Tuition Answer Loans were discharged upon entry of the discharge order;

**(2)**     injunctive relief prohibiting Defendants from continuing to seek collection on Plaintiff Clinton William Ferguson's discharged debts;

**(3)**     actual damages and monetary sanctions for violations of the discharge orders;

**(4)**     disgorgement;

**(5)**     attorneys' fees and costs to the fullest extent permitted under the law;

**(6)**     pre-judgment and post-judgment interest; and

**(7)**     other such relief as the Court deems just and proper.

Respectfully submitted,

Dated: May 9, 2017

By:

/e/ Michael K. Hoverson
Michael K. Hoverson, MN #0175948
Hoverson Law Offices, P.A.
333 Washington Avenue North
Suite 300
Minneapolis, MN 55401
(612)349-2728
hoverson@bitstream.net

Austin Smith, NY # 5377254
SMITH LAW GROUP
3 Mitchell Place
New York, New York 10017
(917) 992-2121
Austin@acsmithlawgroup.com


/e/ Katherine Blanck Radsan
Katherine Blanck Radsan,
MN #0335629
Marschall Smith, MN #0389812
Radsan Smith LLP
2023 Goodrich Avenue
Saint Paul, MN. 5510
(651) 291-0678
katyradsan@comcast.net

Attorneys for Plaintiff Clinton William Ferguson